# IN THE UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

BANK OF AMERICA CORPORATION, f/k/a NationsBank, f/k/a BankAmerica Corporation, f/k/a FleetBoston Financial Corporation, f/k/a BankBoston Corporation, f/k/a Summit Bancorp, f/k/a MBNA Corporation, f/k/a Merrill Lynch & Company, Incorporated,

*Plaintiff-Appellant,*

v.

UNITED STATES OF AMERICA,

*Defendant-Appellee.*

On Appeal from the United States District Court for the Western District of North Carolina, No. 17-cv-546 (Hon. Robert J. Conrad, Jr.)

## APPELLANT'S PAGE-PROOF OPENING BRIEF

Brian W. Kittle
Geoffrey M. Collins
MAYER BROWN LLP
1221 Avenue of the Americas
New York, NY 10020
(212) 506-2187

Marjorie M. Margolies
MAYER BROWN LLP
71 South Wacker Drive
Chicago, IL 60606
(312) 701-8044

Nicole A. Saharsky
Minh Nguyen-Dang
Wajdi C. Mallat
MAYER BROWN LLP
1999 K Street NW
Washington, DC 20006
(202) 362-3000
nsaharsky@mayerbrown.com

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

**DISCLOSURE STATEMENT**

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.

No. <u>23-2319</u>    Caption: <u>Bank of America Corporation v. United States</u>

Pursuant to FRAP 26.1 and Local Rule 26.1,

<u>Bank of America Corporation</u>
(name of party/amicus)

who is <u>appellant</u>, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.    Is party/amicus a publicly held corporation or other publicly held entity?    ☐YES ☑NO

2.    Does party/amicus have any parent corporations?    ☐YES ☑NO
      If yes, identify all parent corporations, including all generations of parent corporations:

3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?    ☑YES ☐NO
      If yes, identify all such owners:
       Berkshire Hathaway, Inc.

4.     Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation?        ☐YES ☑NO
       If yes, identify entity and nature of interest:

5.     Is party a trade association? (amici curiae do not complete this question)        ☐YES ☑NO
       If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.     Does this case arise out of a bankruptcy proceeding?        ☐YES ☑NO
       If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of the debtor.

7.     Is this a criminal case in which there was an organizational victim?        ☐YES ☑NO
       If yes, the United States, absent good cause shown, must list (1) each organizational victim of the criminal activity and (2) if an organizational victim is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of victim, to the extent that information can be obtained through due diligence.

Signature: /s/ Nicole A. Saharsky                    Date:        May 20, 2024

Counsel for: Bank of America Corporation

# TABLE OF CONTENTS

**Page**

INTRODUCTION ..................................................................1

JURISDICTIONAL STATEMENT ...................................5

STATEMENT OF THE ISSUE .......................................5

STATEMENT OF THE CASE ..........................................5

    A.   Statutory Background ......................................5

    B.   Factual Background ........................................9

    C.   Procedural History........................................10

SUMMARY OF THE ARGUMENT...............................12

STANDARD OF REVIEW ...........................................17

ARGUMENT...................................................................18

UNDER 26 U.S.C. § 6621(D), BANK OF AMERICA CAN NET THE
INTEREST ON AN OVERPAYMENT BY ONE MERGED BANK
WITH THE INTEREST ON AN UNDERPAYMENT BY ANOTHER
MERGED BANK ...........................................................18

    A.   Bank of America Qualifies For Interest Netting Under The
        Plain Text Of Section 6621(d) ......................18

        1.   Section 6621(d) requires interest netting for
              overpayments and underpayments "by the same
              taxpayer" ...............................................18

        2.   The overpayments and underpayments here are "by the
              same taxpayer" because of the mergers .................20

        3.   Federal tax law recognizes that the surviving company
              and the merged companies are the "same taxpayer" ...........24

        4.   Bank of America qualifies for interest netting.....................31

    B.   The District Court Erred In Interpreting "By The Same
        Taxpayer" ...............................................32

        1.   The district court erred by inserting a time limitation
              into Section 6621(d) ................................33

        2.   Bank of America is the "same taxpayer" no matter what
              the time period........................................36

3.   The district court's decision ignores the realities of tax compliance and leads to unfair results .................................38

4.   The Federal Circuit's *Wells Fargo* decision does not justify the district court's decision..........................................40

C.   The Payment-Netting Provision, Section 6402(a), Confirms That Bank of America Is The Taxpayer Responsible For The Overpayments And Underpayments ...............................................44

1.   Under Section 6402(a), Bank of America is the "person" that "made" the overpayments and is liable for the underpayments ........................................................................44

2.   Section 6621(d) and Section 6402(a) should be interpreted harmoniously .......................................................46

3.   The district court erred in disregarding Section 6402(a)......51

D.   Section 6621(d)'s Purpose And History Confirm That Bank Of America's Position Is Correct....................................................53

1.   Bank of America's view furthers Section 6621(d)'s purpose, and the government's position thwarts it...............53

2.   Section 6621(d)'s history confirms that Congress intended that provision to apply broadly..............................55

3.   The IRS's contemporaneous understanding was that Section 6621(d) applies in the circumstances here ...............58

CONCLUSION ..........................................................................................60

# TABLE OF AUTHORITIES

**Cases**                                                                        **Page(s)**

*Aetna Life & Cas. v. United Pac. Reliance Ins.,*
   580 P.2d 230 (Utah 1978) ................................................................... 9, 22

*Alexander v. Carrington Mortg. Servs., LLC,*
   23 F.4th 370 (4th Cir. 2022) ........................................................... 44, 47

*Am. Gas & Elec. Co. v. Comm'r,*
   85 F.2d 527 (2d Cir. 1936) ....................................................................... 26

*Anspec Co. v. Johnson Controls, Inc.,*
   922 F.2d 1240 (6th Cir. 1991) ................................................................ 27

*Aquilino v. United States,*
   363 U.S. 509 (1960) ............................................................................... 8, 20

*Argenbright v. Phoenix Fin. Co.,*
   187 A. 124 (Del. Ch. 1936) ............................................................ 8, 22, 31

*Comm'r v. Keystone Consol. Indus., Inc.,*
   508 U.S. 152 (1993) .................................................................................. 47

*Comm'r v. Lester,*
   366 U.S. 299 (1961) .................................................................................. 47

*Comm'r v. Sansome,*
   60 F.2d 931 (2d Cir. 1932) ....................................................................... 30

*CTS Corp. v. Dynamics Corp. of Am.,*
   481 U.S. 69 (1987) ............................................................................... 8, 21

*Deitrick v. Siegel,*
   48 N.E.2d 698 (Mass. 1943) ................................................................... 28

*Del. Ins. Guar. Ass'n v. Christiana Care Health Servs., Inc.,*
   892 A.2d 1073 (Del. 2006) ...................................................................... 22

*Early v. Southgate Corp.,*
   136 F.2d 217 (4th Cir. 1943) .............................................. 25, 32, 37, 50

# TABLE OF AUTHORITIES
## (continued)

**Cases (continued)**                                                                                 **Page(s)**

*Energy East Corp. v. United States,*
  645 F.3d 1358 (Fed. Cir. 2011) ....................................................41, 42, 43

*Exxon Mobil Corp. & Affiliated Cos. v. Comm'r,*
  689 F.3d 191 (2d Cir. 2012)........................................................................58

*Fidanque v. Am. Maracaibo Co.,*
  92 A.2d 311 (Del. Ch. 1952) ......................................................................21

*Goodyear Atomic Corp. v. Miller,*
  486 U.S. 174 (1988) ....................................................................................28

*Helvering v. Metro. Edison Co.,*
  306 U.S. 522 (1939) ............................................................................*passim*

*Howard Johnson Co. v. Detroit Local Joint Exec. Bd., Hotel & Rest.*
  *Emps. & Bartenders Int'l Union,*
  417 U.S. 249 (1973) ....................................................................................21

*Ignacio v. United States,*
  674 F.3d 252 (4th Cir. 2012) ................................................................17, 34

*John Wiley & Sons, Inc. v. Livingston,*
  376 U.S. 543 (1964) ....................................................................................22

*Koppers Co. v. United States,*
  134 F. Supp. 290 (Ct. Cl. 1955)................................................................26

*Krull v. Celotex Corp.,*
  611 F. Supp. 146 (N.D. Ill. 1985)................................................21, 23, 31

*Long v. Merrifield Town Ctr. Ltd. P'ship,*
  611 F.3d 240 (4th Cir. 2010) ....................................................................54

*Lynch v. Jackson,*
  853 F.3d 116 (4th Cir. 2017) ....................................................................18

# TABLE OF AUTHORITIES
## (continued)

**Cases (continued)**                                            **Page(s)**

*Magma Power Co. v. United States,*
   101 Fed. Cl. 562 (Ct. Cl. 2011) .................................................48

*Moline Props. v. Comm'r,*
   319 U.S. 436 (1943) .................................................................28

*Murphy v. Smith,*
   583 U.S. 220 (2018) .................................................................34

*Mut. Bldg. & Loan Ass'n of Pasadena v. Wiborg,*
   139 P.2d 73 (Cal. Dist. Ct. App. 1943) ....................................23

*N. States Power Co. v. United States,*
   73 F.3d 764 (8th Cir. 1996) ......................................................51

*Nat'l Elec. Mfrs. Ass'n v. U.S. Dep't of Energy,*
   654 F.3d 496 (4th Cir. 2011) ....................................................36

*New Cingular Wireless PCS, LLC v. Finley,*
   674 F.3d 225 (4th Cir. 2012) ....................................................47

*Newmarket Mfg. Co. v. United States,*
   233 F.2d 493 (1st Cir. 1956) .....................................................26

*Osmon v. United States,*
   66 F.4th 144 (4th Cir. 2023) .....................................................33

*Peter Schoenfeld Asset Mgmt. LLC v. Shaw,*
   No. Civ.A.20087-NC, 2003 WL 21649926 (Del. Ch. July 10, 2003) ........23

*Pulsifer v. United States,*
   144 S. Ct. 718 (2024) ...............................................................36

*Rodriguez v. FDIC,*
   589 U.S. 132 (2020) .................................................................20

*Rowan Cos. v. United States,*
   452 U.S. 247 (1981) .............................................................48, 59

# TABLE OF AUTHORITIES
## (continued)

**Cases (continued)**                                                    **Page(s)**

*S. Pac. Transp. Co. v. Comm'r*,
    84 T.C. 387 (1985)..............................................................22, 46

*Santa Fe Indus., Inc. v. Green*,
    430 U.S. 462 (1977) ..................................................................21

*Seaboard Air Line Ry. v. United States*,
    256 U.S. 655 (1921) ..................................................................32

*Shaw v. Foreman*,
    59 F.4th 121 (4th Cir. 2023).......................................................17

*Sorenson v. Sec'y of the Treas.*,
    475 U.S. 851 (1986) ..................................................................49

*Sun Pipe Line Co. v. Altes*,
    511 F.2d 280 (8th Cir. 1975).......................................................28

*United States v. Bess*,
    357 U.S. 51 (1958) ....................................................................20

*United States v. Howell*,
    78 U.S. 432 (1870) ....................................................................34

*United States v. Polizzi*,
    500 F.2d 856 (9th Cir. 1974).......................................................28

*W. Md. Ry. v. Comm'r*,
    33 F.2d 695 (4th Cir. 1929).........................................................25

*Wells Fargo & Co. v. United States*,
    827 F.3d 1026 (Fed. Cir. 2016) ...........................................*passim*

**Statutes**

26 U.S.C. § 172 ...........................................................................6, 30, 38

26 U.S.C. § 301 ...............................................................................29

**Statutes (continued)**                                     **Page(s)**

26 U.S.C. § 354(a) ...................................................................30

26 U.S.C. § 361(a) ...................................................................30

26 U.S.C. § 368(a)(1)(A) .........................................................29

26 U.S.C. § 381(c)(2) ...............................................................30

26 U.S.C. § 381(c)(2)(A) ....................................................30, 36

26 U.S.C. § 381(c)(2)(B) ....................................................30, 36

26 U.S.C. § 6110(k)(3) .............................................................48

26 U.S.C. § 6402(a) ...........................................................*passim*

26 U.S.C. § 6402(a) (1986) ......................................................56

26 U.S.C. § 6402(c) ..................................................................45

26 U.S.C. § 6402(d) ..................................................................45

26 U.S.C. § 6402(e) ..................................................................45

26 U.S.C. § 6402(f) ...................................................................45

26 U.S.C. § 6601(a) ...........................................................*passim*

26 U.S.C. § 6601(a) (1954) ......................................................55

26 U.S.C. § 6601(f) (1986) .......................................................56

26 U.S.C. § 6611(a) ..............................................................6, 19

26 U.S.C. § 6611(a) (1954) ......................................................55

26 U.S.C. § 6611(b)(2) ..........................................6, 7, 19, 38

26 U.S.C. § 6621 .............................................................18, 42, 48

# TABLE OF AUTHORITIES
## (continued)

**Statutes (continued)**                                                  **Page(s)**

26 U.S.C. § 6621(a) ........................................................................7

26 U.S.C. § 6621(a)(1)(B) ..............................................................55

26 U.S.C. § 6621(b) ........................................................................7

26 U.S.C. § 6621(c) .........................................................................7

26 U.S.C. § 6621(c)(1) ...................................................................55

26 U.S.C. § 6621(d) ................................................................*passim*

26 U.S.C. § 6651(a)(3) ...................................................................38

26 U.S.C. § 7602 .........................................................................6, 38

26 U.S.C. § 7701(a)(1) ...................................................................31

26 U.S.C. § 7701(a)(14) .................................................................31

28 U.S.C. § 1292(b) .....................................................................5, 12

28 U.S.C. § 1346(a)(1) ....................................................................5

Internal Revenue Service Restructuring and Reform Act of 1998,
  Pub. L. No. 105-206, 112 Stat. 685:

    § 3301 ..............................................................................58

    § 3302 ..............................................................................56

Pub. L. No. 104-168, § 1208, 110 Stat. 1452 (1996) ....................57

Revenue Act of 1928, ch. 852, § 23(a), 45 Stat. 791 ....................24

Tax Reform Act of 1986, Pub. L. 99-514, § 1511(a), 100 Stat. 2085 ............56

Del. Code Ann. tit. 8, § 251(a) ......................................................21

Del. Code Ann. tit. 8, § 259(a) ................................................*passim*

# TABLE OF AUTHORITIES
## (continued)

**Treasury Regulations, Rulings, and Guidance**            **Page(s)**

26 C.F.R. § 1.368-2(b)(1)(ii)(A) ........................................................... 29

26 C.F.R. § 1.368-2(b)(1)(ii)(B) ........................................................... 29

26 C.F.R. § 301.6402-2(a) ..................................................................... 10

26 C.F.R. § 301.6402-3 ...................................................................... 6, 38

26 C.F.R. § 301.6402-3(a)(6)(i) ........................................................... 45

26 C.F.R. § 301.7433-1(d)(ii) ............................................................... 11

Treas. Reg. 74, art. 176 (1939) ............................................................ 24

Rev. Rul. 59-399, 1959-2 C.B. 488 ....................................................... 27

Rev. Rul. 62-60, 1962-1 C.B. 186 ......................................................... 27

Rev. Rul. 66-125, 1966-1 C.B. 342 ....................................................... 27

Rev. Rul. 72-356, 1972-2 C.B. 452 ....................................................... 26

Rev. Proc. 2011-48, 2011-42 I.R.B. 527 ............................................... 53

F.S.A. Mem. 200027026, 2000 WL 33116161 (July 7, 2000) ............... 48

F.S.A. Mem. 200212028, 2002 WL 442928 (Mar. 22, 2002) ........... 58, 59

**Other Authorities**

Am. Jur. 2d *Corporations* (2024) .................................................. 8, 21, 22

Boris I. Bittker & James S. Eustice, *Federal Income Taxation of Corporations and Shareholders* (Nov. 2020) ..................................... 9, 22

Dep't of the Treas., Office of Tax Pol'y, *Netting of Interest on Tax Overpayments and Underpayments* (Apr. 18, 1997) ............................ 57

*Fletch Cyclopedia of the Law of Corporations* (2023) .......................... 21

# TABLE OF AUTHORITIES
## (continued)

**Other Authorities (continued)**                                    **Page(s)**

Bryan A. Garner, *Garner's Modern English Usage* (4th ed. 2016) ............34

H. Comm. on Ways & Means, 104th Cong., *Oversight Initiative Report on Need for Taxpayer Bill of Rights 2 Legislation* (Comm. Print 1995) ......................................................57

H.R. Rep. No. 99-841 (1986) ..........................................................56

H.R. Rep. No. 101-964 (1990) ........................................................56

H.R. Rep. No. 103-826 (1994) ........................................................56

H.R. Rep. No. 104-506 (1996) ...................................................56, 57

H.R. Rep. No. 105-364 (1997) .....................................................7, 54

IRS, *Applicable Federal Rates* (Aug. 8, 2023)................................55

IRS, *Internal Revenue Manual* (Sept. 10, 2017)..........................27

Joint Comm. on Tax'n, *General Explanation of Tax Legislation Enacted in 1998* (1998)................................................................54

*The Oxford American Dictionary and Language Guide* (1999)..................31

S. Rep. No. 105-174 (1998)..........................................................54

# INTRODUCTION

This case raises a statutory-interpretation question about the application of the Internal Revenue Code's interest-netting provision, 26 U.S.C. § 6621(d), in the context of corporate mergers.

Section 6621(d) applies when a taxpayer both owes tax to the government and is owed a tax refund from the government. It provides for interest netting, meaning that for any period when there are equal amounts of overpayments and underpayments, the taxpayer owes no interest. Congress added this provision to prevent an anomaly. For corporate taxpayers, the interest rate for underpayments is higher than the interest rate for overpayments. Congress enacted Section 6621(d) to ensure that a corporate taxpayer that owes no net tax will not have to pay interest to the government.

This case involves the application of Section 6621(d) to corporate mergers. It is undisputed that, when one company merges with another, the surviving company is liable for all pre-merger tax underpayments, and is entitled to refunds of all pre-merger tax overpayments, for the companies that merged. The question here is whether the surviving company can net the *interest* on those overpayments and underpayments under Section 6621(d).

Bank of America's position is that the surviving corporation can net the interest, because Section 6621(d) applies when there are "equivalent underpayments and overpayments by the same taxpayer," 26 U.S.C. § 6621(d), and as a result of the merger, the surviving corporation is deemed the taxpayer that paid the overpayments and that failed to pay the underpayments. The government's position is that the surviving corporation cannot net the interest on those overpayments and underpayments, because the companies were not the "same taxpayer" when they initially made or failed to make those payments. The district court agreed with the government.

The district court erred. Because of the mergers, Bank of America is the "same taxpayer" for purposes of the overpayments and underpayments and the interest on them. A merger combines the merged corporations into one surviving corporation. The surviving corporation not only takes on each merged corporation's assets, liabilities, rights, and obligations, but also takes on their very identities. As a result of the merger, the corporations all are considered one and the same, both prospectively and retrospectively. Relying on that settled law, the Supreme Court and this Court have held that the surviving corporation of a merger is the "same taxpayer" as the merged corporations for federal tax purposes. IRS revenue rulings likewise

recognize that the survivor of a corporate merger is the "same taxpayer" as the companies that merged into it.

The district court held that the taxpayer must be the same when the overpayments and underpayments were "made." But the statute does not say "made," and it does not specify a time when the taxpayer must be the "same." Even if it did, Bank of America is deemed the entity that "made" the overpayments and underpayments by operation of merger law. To justify its rule, the district court relied on *Wells Fargo & Co. v. United States*, 827 F.3d 1026 (Fed. Cir. 2016), but that decision largely supports Bank of America's view; it simply cannot bear the weight the district court put on it.

Further, the government's treatment of interest is flatly inconsistent with its treatment of the overpayments and underpayments themselves. The government acknowledges that under 26 U.S.C. § 6402(a) – the statute that authorizes netting of overpayments and underpayments from past tax years – Bank of America *is* the same taxpayer and the amounts *can* be netted. But under the interest-netting statute, Section 6621(d), the government turns around and argues that Bank of America is *not* the same taxpayer and the interest on the overpayments and underpayments *cannot* be netted. As a matter of statutory interpretation, it makes no sense to define the taxpayer differently in those two related statutes. And as a matter of

basic fairness, the government should not be allowed to take those completely opposite positions simply to get more money from taxpayers.

Finally, only Bank of America's position furthers the statute's purposes and is consistent with its history. Congress enacted Section 6621(d) for one simple reason – to ensure that a taxpayer that does not owe tax does not have to pay interest. But that is exactly what happens under the government's position.

The statute's history reinforces that the government's position is exactly the opposite of what Congress intended. Congress enacted Section 6621(d) to *expand* interest netting after the Treasury Department repeatedly failed to act – not to artificially *limit* interest netting in the way the government suggests.

The government itself has recognized that. Just after Congress enacted Section 6621(d), the IRS Chief Counsel issued written guidance to staff advising that the survivor of a corporate merger *can* net the interest on overpayments and underpayments for which it is responsible because of the merger. Now the government has changed its position in litigation, in an apparent attempt to obtain a windfall. The government was right before, and it is wrong now.

This Court should reverse.

## JURISDICTIONAL STATEMENT

The district court had subject-matter jurisdiction under 28 U.S.C. § 1346(a)(1). On February 14, 2023, the district court granted the government's motion for partial summary judgment. Dkt. 83.

On May 10, 2023, Bank of America asked the district court to certify its summary-judgment decision for interlocutory appeal under 28 U.S.C. § 1292(b). Dkt. 88. The district court granted that motion on August 30, 2023. Dkt. 97. On September 11, 2023, Bank of America petitioned this Court for permission to appeal. Dkt. 98-1. This Court granted that petition on December 29, 2023. Dkt. 100. This Court has jurisdiction under 28 U.S.C. § 1292(b).

## STATEMENT OF THE ISSUE

Whether, when a corporation with a tax overpayment merges with a corporation with a tax underpayment, the surviving corporation can net the interest on the overpayment and underpayment under 26 U.S.C. § 6621(d).

## STATEMENT OF THE CASE

### A.    Statutory Background

1.    Overpayments and underpayments regularly occur in corporate taxation. Although companies pay their taxes on time and in good faith, their ultimate tax liability for a given tax year may not be known until years

later.  That happens for a variety of reasons, including that companies can carry back losses to prior tax years, *see* 26 U.S.C. § 172; that the IRS can make retroactive adjustments as a result of audits, *see id.* § 7602; and that companies can amend their returns, *see, e.g.*, 26 C.F.R. § 301.6402-3.[1]  As a result, a corporate taxpayer may have outstanding tax years for which it has overpayments (where it paid the government too much) and others for which it has underpayments (where it paid the government too little).  Interest runs on those overpayments and underpayments until the tax years are settled.  *See* 26 U.S.C. § 6601(a) (underpayment interest); *id.* § 6611(a), (b)(2) (overpayment interest).

The Internal Revenue Code addresses how to treat the overpayments and underpayments and the interest on them.  First, the Code authorizes the IRS to net the overpayments and underpayments themselves.  Specifically, Section 6402(a) provides that "[i]n the case of any overpayment," the IRS may "credit" the overpayment against any tax liability "on the part of the person who made the overpayment."  26 U.S.C. § 6402(a).  Thus, rather than have the taxpayer and the government send payments or refunds for

---

[1]  All statutory and regulatory references are to the current versions unless otherwise noted.

each tax year, the government can net the overpayments and underpayments and the taxpayer can pay (or receive a refund of) the difference.

Second, the Code addresses how to determine interest on those overpayments and underpayments. It specifies when interest starts to run, 26 U.S.C. §§ 6601(a), 6611(b)(2), and the applicable rates of interest, *id.* § 6621(a)-(c). Then it provides for interest netting on a taxpayer's overpayments and underpayments. Specifically, Section 6621(d) states that, "for any period" for which interest is accruing on "equivalent" overpayments and underpayments "by the same taxpayer," the "net rate of interest" on those amounts "shall be zero" – meaning that the taxpayer does not owe interest on those amounts for those periods. *Id.* § 6621(d). Congress enacted this provision to ensure that a taxpayer that owes no tax will not have to pay interest. *See* H.R. Rep. No. 105-364, at 63-64 (1997).

To illustrate how those provisions operate, suppose a taxpayer had a $100 overpayment for 2020 and a $100 underpayment for 2021, and it settled both tax years in 2024. Under Section 6402(a), the taxpayer would not owe the government any net tax. And under Section 6621(d), the taxpayer would not owe the government any interest for the period from 2022 (when the taxpayer filed its 2021 tax return) to 2024 (when the taxpayer settled

both tax years), because the interest would net on the equivalent overpayment and underpayment for that time. But the government would owe the taxpayer interest on the $100 overpayment for the 2020 tax year for the period between the filing of the taxpayer's 2020 and 2021 tax returns.

Thus, Section 6402(a) and Section 6621(d) work together to ensure that a taxpayer with outstanding overpayments and underpayments can net both the overpayments and underpayments and the interest on them.

2. Federal tax law relies on state corporate law to determine the status, rights, and responsibilities of a corporate taxpayer. *See, e.g.*, *Aquilino v. United States*, 363 U.S. 509, 512-13 (1960); *Helvering v. Metro. Edison Co.*, 306 U.S. 522, 527 (1939).

State law specifies the effects of a corporate merger. *See, e.g.*, *CTS Corp. v. Dynamics Corp. of Am.*, 481 U.S. 69, 89 (1987). When the merger takes place, "the old corporations have their identit[ies] absorbed into that of . . . the one into which they were merged." *Argenbright v. Phoenix Fin. Co.*, 187 A. 124, 126 (Del. Ch. 1936). The merged companies cease to exist, and the surviving corporation acquires all of their assets, liabilities, rights, and obligations. *See, e.g.*, Del. Code Ann. tit. 8, § 259(a); 19 Am. Jur. 2d *Corporations* § 2242 (2024). The surviving corporation "stands in the same position" as that occupied by the merged corporations "prior to the merger."

*Aetna Life & Cas. v. United Pac. Reliance Ins.*, 580 P.2d 230, 232 (Utah 1978); *see, e.g.*, Boris I. Bittker & James S. Eustice, *Federal Income Taxation of Corporations and Shareholders* ¶ 12.21[1] (Nov. 2020). That is, the merging companies all become the same company, and the surviving company is treated as if it always had been that company. *See*, *e.g.*, *Metro. Edison Co.*, 306 U.S. at 527, 529 (applying that principle in the federal tax context).

### B.     Factual Background

1.  Since 1998, several banks merged into Bank of America. Third Am. Compl. (Compl.) ¶¶ 2-6, Dkt. 29. In all, six mergers are at issue, involving seven banks: Fleet Financial Group merged with BankBoston in 1999 and Summit Bank in 2001, then Bank of America merged with BankAmerica in 1998, Fleet Financial Group in 2004, MBNA in 2006, and Merrill Lynch in 2013. *Id.* Each of those banks has outstanding overpayments and underpayments for various tax years between 1987 and 2009. *Id.* ¶¶ 12-18, 35.

It is undisputed that, as a result of the mergers, Bank of America is now responsible for all of the banks' tax obligations for years before the mergers. Specifically, the parties agree that Bank of America is liable for each merged bank's underpayments and is entitled to refunds for each merged

bank's overpayments.  *See* Gov't Resp. to Pl.'s First Request for Admissions (Gov't RFA Resp.) 5-6, 10-11, Dkt. 67-1.

2.  Because Bank of America is now responsible for those overpayments and underpayments, it seeks to apply the payment-netting provision in Section 6402(a) and the interest-netting provision in Section 6621(d). Compl. ¶ 23, Dkt. 29.  That will ensure that Bank of America will not have to pay interest when it owes no net tax.

The government agrees that under Section 6402(a), Bank of America can net all of the merged banks' overpayments and underpayments and then pay (or be refunded) the difference.  *See* Gov't RFA Resp. 10-11, Dkt. 67-1.  But the government disagrees about application of Section 6621(d), taking the position that Bank of America cannot net the interest on the overpayments and underpayments because it is not the "same taxpayer" as the merged banks with respect to the overpayments and underpayments. *See, e.g.*, Compl. Ex. E at 2, Dkt. 29-23.

C.    **Procedural History**

1.  Bank of America filed three administrative claims with the IRS, seeking (among other things) refunds of interest paid on underpayments that should have been netted with interest owed on equivalent overpayments.  Compl. ¶¶ 27-29, Dkt. 29; *id.* Ex. A at 2-3, Dkt. 29-2; *see* 26 C.F.R.

§ 301.6402-2(a). The IRS denied two of the claims and did not act on the third claim. Compl. ¶¶ 31-33, Dkt. 29; *see* 26 C.F.R. § 301.7433-1(d)(ii).

Bank of America brought this lawsuit to recover on its claims. *See* Compl. ¶ 36, Dkt. 29. The complaint covers tax adjustments for 23 years across the seven pre-merger banks, *id.* ¶¶ 12-18, 35, including thousands of interest adjustments, *see id.* Ex. G, Dkts. 29-25 to -29. Because of the large number of adjustments at issue, the parties selected two representative test cases to provide factual context for their legal dispute. Order 2, Dkt. 83. Both involve Bank of America's merger with Merrill Lynch. In both cases, Bank of America seeks to net the interest on a pre-merger Bank of America underpayment against the interest on a pre-merger Merrill Lynch overpayment. *Id.* at 3.

2. The parties cross-moved for partial summary judgment. *See* Dkts. 67, 68. No relevant facts were disputed. Order 3 n.1, Dkt. 83. The only issue was whether, under Section 6621(d), the survivor of a corporate merger can net the interest on an overpayment for a pre-merger tax year by one merged company with the interest on an underpayment for a pre-merger tax year by another merged company. *Id*.

The district court held that the surviving corporation cannot net the interest in that situation. Order 2, Dkt. 83. The court noted that Section

6621(d) applies to interest on overpayments and underpayments "by the same taxpayer." *Id.* at 3 (quoting 26 U.S.C. § 6621(d)). In the court's view, the "most natural interpretation" of that language is "*made* by the same taxpayer." *Id.* at 6-10 (internal quotation marks omitted). The court reasoned that the statute "has a temporal element" that requires that the taxpayer be the same when the overpayments and underpayments were "made." *Id.* at 4, 10. Although the court recognized that "Bank of America is now the taxpayer liable for [the merged banks'] taxes," it nonetheless disallowed interest netting. *Id.* at 6, 11 (emphasis omitted). To support its holding, the court relied (*id.* at 4-5) on the Federal Circuit's decision in *Wells Fargo & Co. v. United States*, 827 F.3d 1026 (Fed. Cir. 2016).

3. The district court certified its summary-judgment decision for interlocutory appeal under 28 U.S.C. § 1292(b), Order 1-2, Dkt. 97, and this Court granted Bank of America's petition for permission to appeal, Dkt. 100.

## SUMMARY OF THE ARGUMENT

Under Section 6621(d), the survivor of a corporate merger can net the interest on a pre-merger overpayment by one merged company with the interest on a pre-merger underpayment by another merged company.

A. Section 6621(d) provides for interest netting on "overpayments and underpayments by the same taxpayer." Here, whether the surviving corporation is the "same taxpayer" as the merged corporations depends on state law, because federal tax law looks to state law to determine a corporation's legal status.

A fundamental principle of state corporate law is that the survivor of a corporate merger is considered the "same" as each company that merged into it. The surviving corporation not only takes on each merged corporation's assets, liabilities, rights, and obligations, but also takes on its very identity. In particular, the "debts, liabilities and duties" of the merged companies – which includes their tax obligations – become those of the surviving corporation, "as if" they "had been incurred or contracted by" the surviving corporation in the first instance. Del. Code Ann. tit. 8, § 259(a). The survivor and the companies that merged into it are treated as all one company, as if it always had been that way. That is, they are considered the same company, both prospectively and retrospectively.

The Supreme Court, this Court, and other federal courts have applied that settled principle in the federal tax context. They have recognized that the surviving company is the "same taxpayer" as the companies that merged into it when determining federal tax liability for pre-merger events. *See,*

*e.g.*, *Helvering v. Metro. Edison Co.*, 306 U.S. 522, 527 (1939). That is nothing unique to tax law: The surviving company and the merged companies are treated as one and the same for *all* purposes because of the merger, unless state or federal law specifies otherwise.

B. The district court erred in interpreting Section 6621(d). The district court added a temporal limitation by inserting the word "made" into the statute (as if the statute read "made by the same taxpayer"). But the statute does not say "made" or otherwise specify a time when the taxpayers have to be the "same."

Even if the taxpayers had to be the "same" when the overpayments and underpayments were "made," Bank of America still would prevail. As a result of the mergers, Bank of America is deemed the company that "made" all of the outstanding overpayments and underpayments. That is, it does not matter what time the statute considers, because Bank of American and the merged banks are now considered the same, both prospectively and retrospectively. The district court overlooked this key aspect of state merger law.

The district court's decision ignores the realities of tax compliance and leads to unfair results. Whether a company has an overpayment or underpayment often is not known until well after the tax year at issue because of

later adjustments that are applied retroactively. It would be unfair to allow the IRS to consider those later events in determining whether there is an overpayment or underpayment, but then prohibit the taxpayer from considering other later-occurring events (such as a merger) in determining whether interest netting applies.

The district court relied on the Federal Circuit's decision in *Wells Fargo*. But that decision provides significant support for Bank of America's position, because the Federal Circuit determined that "same taxpayer" should be interpreted by reference to state merger law, under which the surviving company is treated the same as the merged companies. The Federal Circuit issued a split decision on the test cases at issue because it erroneously believed for one test case that it was bound by a prior decision that did not even address mergers. Once that error is corrected, *Wells Fargo* provides no support for the district court's decision here.

C. Section 6402(a) – the provision that addresses netting of overpayments and underpayments – confirms that Bank of America's view of Section 6621(d) is correct. The government admits that under Section 6402(a), Bank of America *is* the same taxpayer and the overpayments and underpayments *can* be netted. But then on the interest-netting statute, Section

6621(d), the government argues that Bank of America *is not* the same tax-payer and the interest on the overpayments and underpayments *cannot* be netted. The two provisions work together and should be interpreted consistently. The government's contrary position violates bedrock principles of statutory construction and is unfair to taxpayers.

The district court stated that Section 6402(a) is irrelevant because netting of payments under that provision is discretionary. But the statute gives the government the discretion to net the payments only if the taxpayer meets the statutory criteria – *i.e.*, only if it is the "taxpayer" that "made" the overpayment and has an offsetting underpayment. The test cases illustrate the unfairness of the government's position, because they show that the government is taking irreconcilable positions on Section 6402(a) and Section 6621(d) simply to obtain more money from taxpayers.

D. Section 6621(d)'s purpose and history confirm that Bank of America's position is correct. Congress enacted Section 6621(d) because the different overpayment and underpayment interest rates for corporate taxpayers could result in an unfair situation where a taxpayer owes no tax but still would owe interest. Congress wanted to ensure that would not happen. Here, the government has no explanation for why Bank of America should

have to pay interest in situations where everyone agrees that it owes no net tax.

Congress enacted Section 6621(d) only after it repeatedly told the Treasury Department to implement broad interest netting, and the Treasury Department failed to act.  And after Section 6621(d) was enacted, the IRS Chief Counsel recognized that the statute is meant to apply in the circumstances here.  Many years later, the government reversed its position in litigation, but its new position cannot be reconciled with Congress's clear intent in enacting Section 6621(d).

This Court should reverse.

## STANDARD OF REVIEW

This Court reviews a district court's grant of summary judgment *de novo*.  *Shaw v. Foreman*, 59 F.4th 121, 129 (4th Cir. 2023).  The Court also reviews questions of statutory interpretation *de novo*.  *Ignacio v. United States*, 674 F.3d 252, 254 (4th Cir. 2012).

**UNDER 26 U.S.C. § 6621(D), BANK OF AMERICA CAN NET THE IN-TEREST ON AN OVERPAYMENT BY ONE MERGED BANK WITH THE INTEREST ON AN UNDERPAYMENT BY ANOTHER MERGED BANK**

### A. Bank of America Qualifies For Interest Netting Under The Plain Text Of Section 6621(d)

Section 6621(d) provides for netting of interest on overpayments and underpayments "by the same taxpayer." 26 U.S.C. § 6621(d). Here, Bank of America is the "same taxpayer" as all of the merged banks by virtue of the mergers. So under the plain text of the statute, Bank of America qualifies for interest netting. *See Lynch v. Jackson*, 853 F.3d 116, 121 (4th Cir. 2017).

#### 1. Section 6621(d) requires interest netting for overpayments and underpayments "by the same taxpayer"

Section 6621 addresses interest on tax overpayments and underpayments. The provision at issue, Section 6621(d), states:

> To the extent that, for any period, interest is payable under subchapter A and allowable under subchapter B on equivalent underpayments and overpayments by the same taxpayer of tax imposed by this title, the net rate of interest under this section on such amounts shall be zero for such period.

26 U.S.C. § 6621(d). The language "interest is payable under subchapter A" refers to interest the taxpayer owes on underpayments, *see id.* § 6601(a),

and "allowable under subchapter B" refers to interest the government owes on overpayments, *see id.* § 6611(a).

By its text, Section 6621(d) sets out three requirements for interest netting: (1) "equivalent" "overpayments and underpayments" (*i.e.*, overpayments and underpayments in the same amount) (2) "by the same taxpayer" (3) for which interest is accruing at the same time (*i.e.*, "for any period" of time). 26 U.S.C. § 6621(d).[2] In those circumstances, where the overpayments and underpayments cancel each other out so the taxpayer owes no net tax, the government cannot charge interest (*i.e.*, the "net rate of interest" "shall be zero"). *Id.* Put another way, this provision "eliminat[es]" the interest due on "overlapping periods of tax overpayments and underpayments." *Id.* (title; capitalization altered).

In this case, the government acknowledges that there are various time periods for which interest accrued on overpayments and underpayments of the same amount. *See* Order 2, Dkt. 83. So the only dispute is whether the overpayments and underpayments are "by the same taxpayer." *Id.* The

---

[2] The interest on an underpayment runs from the date of the company's tax return until the amount due is paid. 26 U.S.C. § 6601(a). The interest on an overpayment runs from the date of the overpayment until the amount is refunded or credited to another tax liability. *See id.* § 6611(b)(2).

statute does not define "same taxpayer" or specify any particular point in time for determining whether the taxpayer is the same.

### 2. The overpayments and underpayments here are "by the same taxpayer" because of the mergers

Whether Bank of America and the merged banks are the "same taxpayer" under Section 6621(d) depends on state merger law. Under state law, the survivor of a corporate merger is deemed the "same taxpayer" as the merged companies for all purposes as a result of the merger. The Supreme Court and this Court have consistently recognized that principle, which answers the statutory-interpretation question here.

a. Federal tax law generally does not create substantive rights, but instead "attaches" federal tax consequences "to rights created under state law." *United States v. Bess*, 357 U.S. 51, 55 (1958). "[I]t has long been the rule that in the application of a federal revenue act, state law controls in determining the nature of the legal interest" of a taxpayer. *Aquilino v. United States*, 363 U.S. 509, 512-13 (1960) (internal quotation marks omitted).

The status, responsibilities, powers, and obligations of corporations are determined by state law. "Corporations are generally creatures of state law." *Rodriguez v. FDIC*, 589 U.S. 132, 137 (2020) (internal quotation

marks omitted). They are created and defined by state law. *Santa Fe Indus., Inc. v. Green*, 430 U.S. 462, 479 (1977). Matters of corporate governance, including corporate reorganizations such as mergers, are purely matters of state law. *See CTS Corp. v. Dynamics Corp. of Am.*, 481 U.S. 69, 89 (1987); *see also* 19 Am. Jur. 2d *Corporations* § 2137 (2024). Thus, Bank of America's status with respect to the merged banks under Section 6621(d) depends on state law.

Here, all of the banks in the test cases are Delaware entities and the mergers were undertaken under Delaware law, so Delaware law applies. Compl. ¶ 1, Dkt. 29; *see* Del. Code Ann. tit. 8, § 259(a) (defining the "[s]tatus, rights, [and] liabilities" of the survivor of a merger). But the relevant merger law is uniform across states. *See* 15 *Fletch Cyclopedia of the Law of Corporations* § 7121 (2023); *see also, e.g., Howard Johnson Co. v. Detroit Local Joint Exec. Bd., Hotel & Rest. Emps. & Bartenders Int'l Union*, 417 U.S. 249, 257 (1973); *Krull v. Celotex Corp.*, 611 F. Supp. 146, 148 (N.D. Ill. 1985).

b. A merger occurs when two or more corporations (the merged corporations) combine, with one of those corporations surviving the merger (the surviving corporation). Del. Code Ann. tit. 8, § 251(a); *see Fidanque v. Am. Maracaibo Co.*, 92 A.2d 311, 315 (Del. Ch. 1952). The merged corporations

"cease" their "separate existence," and the new corporation takes on "all" of their "property, rights, privileges, powers and franchises, and all and every other interest." Del. Code Ann. tit. 8, § 259(a); *see Del. Ins. Guar. Ass'n v. Christiana Care Health Servs., Inc.*, 892 A.2d 1073, 1077-78 (Del. 2006); *see also John Wiley & Sons, Inc. v. Livingston*, 376 U.S. 543, 550 n.3 (1964) (noting the "the general rule that in the case of a merger the corporation which survives is liable for the debts and contracts of the one which disappears"); 19 Am. Jur. 2d *Corporations* § 2242 (similar). That includes all of the tax obligations of the merged companies. *S. Pac. Transp. Co. v. Comm'r*, 84 T.C. 387, 393 (1985).

Importantly, the surviving company is not merely a contractual successor to the companies that merged into it; it *is* the same company as a matter of law. The "old corporations have their identity absorbed into that of the new corporation or the one into which they were merged." *Argenbright*, 187 A. at 126. Once the merged corporations become one and the same with the surviving corporation, the surviving corporation "stands in the same position as that occupied by" the merged corporations before the merger. *Aetna Life & Cas.*, 580 P.2d at 232; *see, e.g.*, Boris I. Bittker & James S. Eustice, *Federal Income Taxation of Corporations and Shareholders* ¶ 12.21[1] (Nov. 2020) (surviving corporation "steps into the shoes of the

disappearing corporation"); *Peter Schoenfeld Asset Mgmt. LLC v. Shaw*, No. Civ.A.20087-NC, 2003 WL 21649926, at *1 (Del. Ch. July 10, 2003) (similar), *aff'd*, 840 A.2d 642 (Del. 2003). Or, more colorfully, the merged corporations "become a part of the muscle and the blood stream of the [surviving] corporation." *Mut. Bldg. & Loan Ass'n of Pasadena v. Wiborg*, 139 P.2d 73, 74 (Cal. Dist. Ct. App. 1943).

Further, the surviving corporation is viewed as the unbroken continuity of each merged company, both prospectively and retrospectively. The surviving corporation possesses all of the legal interests of the merged companies "as they were" in the hands of the merged companies. Del. Code Ann. tit. 8, § 259(a). In particular, any "debts, liabilities and duties" of the merged companies become those of the surviving corporation "as if said debts, liabilities, and duties had been incurred or contracted by it [*i.e.*, the surviving corporation]" in the first instance. *Id.*

That is, "by operation of law, the successor corporation assumes all debts and liabilities of the predecessor corporation *precisely as if it had incurred those liabilities itself*." *Krull*, 611 F. Supp. at 148 (emphasis added). The surviving corporation and the merged companies thus are deemed to be one and the same, as if it always had been that way.

### 3. Federal tax law recognizes that the surviving company and the merged companies are the "same taxpayer"

a. The Supreme Court and this Court have relied on that settled state merger law to treat the surviving company and the merged companies as the same company for federal tax purposes, including retrospectively.

For example, in *Helvering v. Metropolitan Edison Co.*, 306 U.S. 522 (1939), the Supreme Court addressed whether a company could deduct expenses in connection with the redemption of bonds that had been issued by the company's subsidiaries. *Id.* at 523. After the bonds had been issued but before they were redeemed, the subsidiaries merged into the parent corporation. *Id.* at 523-24. Under the federal tax laws, the parent corporation could deduct the expenses if it was the "corporation" that issued the bonds. *Id.* at 526; *see* Revenue Act of 1928, ch. 852, § 23(a), 45 Stat. 791; Treas. Reg. 74, art. 176 (1939).

The Supreme Court held that the parent corporation could deduct the bond expenses because it is considered the "corporation" that issued the bonds as a result of the merger. *Metro. Edison*, 306 U.S. at 529. The Court explained that when two companies merge, "the corporate personality of the [merged company] is drowned in that of the [surviving company]." *Id.* at

527, 529 (applying Pennsylvania law). Because "the identity of the corporation issuing the bonds continues in the successor," "the continuing corporation may deduct" the bond expenses as a matter of federal tax law. *Id.* at 526, 529. The Supreme Court thus confirmed that application of federal tax law depends on a corporation's status under state law, and that state merger law treats the surviving company and the merged companies as the same, including for past events.

This Court has recognized and applied the same principle. In *Early v. Southgate Corp.*, 136 F.2d 217 (4th Cir. 1943), the Court considered whether the surviving company of a merger could include the value of the merged companies' capital stock when calculating its own value for federal tax purposes. *Id.* at 218-19. The Court held that it could, explaining that the survivor of a merger "succeeds by operation of law to all the rights and liabilities of the [merged companies] and carries forward [their] identit[ies]." *Id.* at 221 (internal quotation marks omitted) (applying Virginia law). "[T]he merging corporations became in law and in fact a single entity, but without terminating the corporate existence of any of them." *Id.* at 219. Thus, in applying federal tax law, this Court treated the surviving company and the merged companies as the same taxpayer. *Id.* at 221; *see, e.g.*, *W. Md. Ry. v. Comm'r*, 33 F.2d 695, 698 (4th Cir. 1929) (surviving corporation,

as "a mere continuation" of the merged company, "is entitled to the same deduction" that the merged company "would have been entitled to, if the [merger] had not taken place").

Other federal courts likewise have treated the surviving company and the merged companies as the same taxpayer for federal tax purposes. *See, e.g.*, *Newmarket Mfg. Co. v. United States*, 233 F.2d 493, 499 (1st Cir. 1956) ("the transferee in a statutory merger should be deemed to be continuing in itself the corporate life of the now-defunct component" and "the two corporate entities were to be treated for a substantive purpose in the income tax as the *same taxpayer*" (emphasis added)); *Am. Gas & Elec. Co. v. Comm'r*, 85 F.2d 527, 530 (2d Cir. 1936) (surviving corporation is "*deemed the same as each of the corporations which formed it for the purpose of answering for the liabilities of the old corporation*," and may be sued "as if no change had been made . . . in the organization of the original corporation" (emphasis added; internal quotation marks omitted)); *Koppers Co. v. United States*, 134 F. Supp. 290, 295 (Ct. Cl. 1955) (surviving company "is *treated the same as its components which formed it*" for federal tax purposes (emphasis added)).

The IRS has issued several revenue rulings to the same effect. *See, e.g.*, Rev. Rul. 72-356, 1972-2 C.B. 452 ("[A] surviving corporation carries

with it all those characteristics which the merged corporation had prior to the merger and that the history of the predecessor corporation carries forward to the survivor corporation."); Rev. Rul. 66-125, 1966-1 C.B. 342 (survivor of a corporate merger between a cigarette manufacturer and another company was the "manufacturer" of the merged company's cigarettes and therefore was entitled to a refund of excise tax on those cigarettes); Rev. Rul. 62-60, 1962-1 C.B. 186 ("[W]here a corporation is absorbed by another corporation in a statutory merger or consolidation the resultant corporation should be regarded as the same taxpayer."); Rev. Rul. 59-399, 1959-2 C.B. 488 (surviving corporation "becomes in effect the same taxable entity as [the merged companies]"); *see also* IRS, *Internal Revenue Manual* § 32.2.2 (Sept. 10, 2017) (revenue rulings are "official interpretation[s] by the [IRS] of the Internal Revenue Code"). That is, the IRS has applied the settled rule of merger law and concluded that the surviving corporation and the corporations that merged into it are the "same taxpayer." Rev. Rul. 62-60, 1962-1 C.B. 186.

This is not unique to tax law. Courts in a variety of contexts regularly apply the principle that the surviving corporation is the same company as the merged companies with respect to past events. *See, e.g.*, *Anspec Co. v.*

*Johnson Controls, Inc.*, 922 F.2d 1240, 1247 (6th Cir. 1991) (surviving corporation is the same "corporation" as the merged company for purposes of CERCLA liability); *Sun Pipe Line Co. v. Altes*, 511 F.2d 280, 283-84 (8th Cir. 1975) (surviving corporation can sue for pre-merger tort damages incurred by the merged company); *United States v. Polizzi*, 500 F.2d 856, 907-08 (9th Cir. 1974) (surviving corporation can be criminally prosecuted as though it were the merged company); *Deitrick v. Siegel*, 48 N.E.2d 698, 703 (Mass. 1943) (survivor of a bank merger was the "original payee" of a note issued pre-merger by one of the merged banks, because the surviving bank was "in substance and effect" the same as the merged banks). That settled principle applies when analyzing Section 6621(d), just as it applies everywhere else.

b. In the Internal Revenue Code, Congress has incorporated that fundamental rule of state merger law and has expressly stated when it wants to deviate from that rule. Courts "generally presume that Congress is knowledgeable about existing law pertinent to the legislation it enacts." *Goodyear Atomic Corp. v. Miller*, 486 U.S. 174, 184-85 (1988).

As a general matter, the Code treats corporations as separate and distinct, even from entities that own or control them. *See, e.g.*, *Moline Props.*

*v. Comm'r*, 319 U.S. 436, 438-39 (1943).  But the Code recognizes an exception to that principle for mergers, treating the surviving company and the companies that merged into it as the same company.

The Code defines a "[r]eorganization" for federal tax purposes to include "a statutory merger," meaning a merger under state corporate law. 26 U.S.C. § 368(a)(1)(A).  Treasury regulations then define a "statutory merger" as one where the surviving corporation takes on "[a]ll of the assets . . . and liabilities" of the merged companies and absorbs the merged companies so that they "cease[]" to have any "separate legal existence."  26 C.F.R. § 1.368-2(b)(1)(ii)(A)-(B).  Those provisions "recognize that a central, distinguishing feature of mergers from other forms of acquisition is that mergers affect a continuation of identity from the pre-merger corporations to the post-merger surviving corporation and pre-merger companies' assets and liabilities are *automatically* assumed by the post-merger entity." *Wells Fargo & Co. v. United States*, 827 F.3d 1026, 1040 (Fed. Cir. 2016).

Various Code sections confirm that the surviving corporation generally is treated the same as the merged companies.  For example, although a corporation's distribution of property to another taxpayer usually is a taxable event, *e.g.*, 26 U.S.C. § 301, the transfer of property pursuant to a merger

agreement is not a taxable event, because the parties to a merger are considered the same taxpayer, *id.* §§ 354(a), 361(a).

When Congress wants to deviate from the settled rule, it says so expressly. For example, a company generally can offset profits and losses from one year against losses and profits from other years. *See* 26 U.S.C. § 172. Courts had recognized that, because the survivor of a merger is the same as the merged companies, any existing profits or losses of the merged companies were profits or losses that the surviving company could use to offset losses or profits from other years. *See, e.g.*, *Comm'r v. Sansome*, 60 F.2d 931, 933 (2d Cir. 1932). Congress codified that principle in Section 381(c)(2), providing that "the earnings and profits or deficit in earnings and profits" of a merged company is "deemed to have been received or incurred" by the surviving company. 26 U.S.C. § 381(c)(2)(A).

But then Congress limited that principle's application, specifying that a merged company's pre-merger losses cannot be used to offset the pre-merger profits of a different merged company, but instead can be used "only to offset . . . profits accumulated after the date of [the merger]." 26 U.S.C. § 381(c)(2)(B). This provision shows that Congress knows that a surviving corporation is treated the same as the merged corporations, and that it must expressly limit the retroactive effect of a merger when desired. Congress

did no such thing in Section 6621(d), so the settled rule of state merger law applies.

### 4. Bank of America qualifies for interest netting

Bank of America qualifies for interest netting under Section 6621(d) because the overpayments and underpayments at issue were "by the same taxpayer." Bank of America is the "taxpayer." *See* 26 U.S.C. § 7701(a)(1), (14). By operation of Delaware law, Bank of America is the "same" taxpayer as the merged banks. It is responsible for all legal interests of the merged banks, "as if" it had incurred them itself. Del. Code Ann. tit. 8, § 259(a); *see, e.g.*, *Krull*, 611 F. Supp. at 148. It has not only taken on the assets and liabilities of the merged banks, but also their very identities – and thus is treated as one unbroken company, as if it always had been that way. *Argenbright*, 187 A. at 126.

Further, all of the overpayments are "by" Bank of America, because they are attributable to Bank of America. As the district court recognized, "by" has many meanings. *See* Order 6 n.3, Dkt. 83. The parties offered the two most relevant definitions: "through the agency, means, instrumentality, or causation of" (government's view), or "concerning" or "with respect to" (Bank's view). *Id.* at 5-6 (quoting *The Oxford American Dictionary and Language Guide* 127 (1999)). The district court chose the government's

view. *Id.* at 9. But the result is the same under both, because both signify responsibility or attribution, and here, the overpayments and underpayments are the responsibility of Bank of America and are attributed to it as if it had incurred them itself. Del. Code Ann tit. 8, § 259(a); *see* pp. 20-31, *supra.*

Thus, for purposes of Section 6621(d), all of the overpayments and underpayments at issue were "by the same taxpayer." That is true here just as it was in *Metropolitan Edison*, where the Supreme Court held that the surviving corporation was the same corporation that issued the bonds, and in *Southgate Corp.*, where this Court held that the surviving corporation was the same corporation that owned the capital stock. To hold otherwise would fail to respect state merger law. *See Seaboard Air Line Ry. v. United States*, 256 U.S. 655, 656-57 (1921) ("We cannot believe that Congress intended to discourage, hinder or obstruct the orderly merger . . . of corporations as the various states might authorize.").

## B. The District Court Erred In Interpreting "By The Same Taxpayer"

In reaching the contrary conclusion, the district court made two errors: it read in a limitation that does not appear on the face of the statute, and it failed to account for a key aspect of state merger law. The court also

relied on the Federal Circuit's decision in *Wells Fargo*, but that decision does not justify ruling for the government here.

### 1. The district court erred by inserting a time limitation into Section 6621(d)

Section 6621(d) applies to interest on "equivalent underpayments and overpayments by the same taxpayer." 26 U.S.C. § 6621(d). The district court interpreted this language to include a "temporal limitation." Order 6-10, Dkt 83. It did that by reading in the word "made," as if the statute said "made by the same taxpayer." *Id.*

The court should not have "insert[ed] [a] word[] Congress chose to omit." *Osmon v. United States*, 66 F.4th 144, 149 (4th Cir. 2023). The district court decided that it could add "made" because that word had been "left out merely by means of a grammatical ellipsis." Order 6-7, Dkt. 83. It stated that a "grammatical ellipsis" occurs when "part of a clause is left understood and the reader or listener is able to supply the missing words." *Id.* (internal quotation marks omitted). The court gave several examples of "grammatical ellipses," such as "above" for "above-mentioned," "amicus" for "amicus brief," and "sidebar" for "sidebar conference." *Id.* at 7 n.5 (internal quotation marks omitted).

The district court erred in using that principle to change the substantive meaning of Section 6621(d). It may well be that in everyday usage, a

speaker or writer sometimes uses a shorthand word for a longer phrase, and the audience understands that the meaning is the same. *See* Order 7, Dkt. 83 (citing Bryan A. Garner, *Garner's Modern English Usage* 995 (4th ed. 2016)). But statutory interpretation is different: Congress understands that every word matters, and it expects courts to interpret the words it provides rather than adding their own words. *See Murphy v. Smith*, 583 U.S. 220, 224 (2018) ("[R]espect for Congress's prerogatives as policymaker means carefully attending to the words it chose rather than replacing them with others of our own."); *Ignacio*, 674 F.3d at 255 ("Courts must construe statutes as written, and not add words of their own choosing." (brackets and internal quotation marks omitted)).[3]

Even if it were permissible to apply a "grammatical ellipsis" principle in statutory construction, the district court took it too far by using that principle to change the statute's substantive scope. The court did not simply determine that the statute used an established shorthand word for a longer

---

[3] The district court cited *United States v. Howell*, 78 U.S. 432, 436 (1870), but that was not a case about adding words to a statute. The statute prohibited passing a "false, forged, or counterfeited note[]" "issued under the authority of the statute"; the defendant argued that a forged note could not be "issued under the authority of the statute"; and the Court rejected that argument because it would have rendered the entire statute meaningless. *Id.* at 436-37.

phrase. Instead, it added "made" and interpreted that word to fix two points in time when the taxpayers had to be the "same" – for an underpayment, the "date prescribed for payment" of that year's taxes, and for an overpayment, the "first date when a taxpayer's payments and credits exceed the taxpayer's liabilities" for that tax year. Order 4 n.2. The court did not merely fill in a "grammatical ellipsis"; it rewrote the statute.

Further, inserting "made" into the statute does not make sense purely as a matter of grammar, because a taxpayer does not "make" an underpayment. *See* Order 8, Dkt. 83 (relying on a "grammar canon"). An "underpayment" is not the deficient amount that was paid; it is the additional amount still due. *See* 26 U.S.C. § 6601(a) (underpayment is the "amount of tax" that "is not paid" by the due date). The district court misunderstood this point; it erroneously defined an "underpayment" as "a payment that is less than the amount owed or due." Order 10, Dkt. 83. Thus, a taxpayer does not "make" an underpayment; the whole point of an underpayment is that it was *not* made.[4]

---

[4] The district court cited other provisions in the Code where, in its view, Congress used "payment by" to mean "payment made by." Order 8-9, Dkt. 83. But nothing suggests that "made" changes the meaning of any of those provisions, like the district court's interpretation does here. Besides, the presumption of consistent usage "mostly applie[s] to terms with some heft

Even if the statute said "made," it would not impose the temporal limitation envisioned by the district court. "Made" would direct the court to determine which entity is responsible for the amounts and would not limit the court to considering only certain historical facts. Indeed, that is just how "made" is used in Section 6402(a). *See* pp. 48-49, *infra*. Notably, the only language about time in Section 6621(d) is the language "for any period," which refers to the period of time when interest is accruing on both overpayments and underpayments. If Congress had wanted to pinpoint a precise time for determining whether the overpayments and underpayments were "by the same taxpayer," it would have said so expressly. *See Nat'l Elec. Mfrs. Ass'n v. U.S. Dep't of Energy*, 654 F.3d 496, 506-07 (4th Cir. 2011). Indeed, Congress did specify precise times in another provision related to mergers. *See* 26 U.S.C. § 381(c)(2)(A)-(B) (discussed on pp. 30-31, *supra*).

### 2. Bank of America is the "same taxpayer" no matter what the time period

Even if Section 6621(d) contained the time limitation envisioned by the district court, Bank of America still would qualify for interest netting

---

and distinctiveness," not "ubiquitous" and "context-dependent" words like "by." *Pulsifer v. United States*, 144 S. Ct. 718, 735 (2024).

because Bank of America is retroactively deemed the entity that "made" the overpayments and underpayments because of the mergers.[5]

Under state merger law, Bank of America is the "same taxpayer" as the merged banks, both prospectively and retrospectively. It is treated as if it had made the overpayments and failed to make the underpayments in the first place. *See* pp. 20-23, *supra*. That state law treatment is controlling for federal tax law purposes. *See Metro. Edison*, 306 U.S. at 527, 529; *Southgate Corp.*, 136 F.2d at 219; *see also* pp. 24-31, *supra*. Thus, the result under Section 6621(d) is the same no matter what time is used to determine eligibility for interest netting.

The district court overlooked this key aspect of state merger law. It correctly recognized that, as the result of a merger, "the surviving corpora-

---

[5] The district court stated that "Bank of America concede[d]" that the government "would be correct if the statute contained the word 'made.'" Order 6, Dkt. 83. That is incorrect; Bank of America simply stated that the government had to add "made" to the statute for its argument to make any sense. *Id.* (quoting BOA S.J. Reply 3, Dkt. 76). Bank of America argued that it would prevail if Section 6621(d) included "made" because it is the entity that "made" the overpayments and underpayments because of the mergers. *See* BOA S.J. Reply 14, Dkt. 76 (even if the court added "made" to the statute, that "is not the end of the analysis"); Tr. of S.J. Hearing 17-18, Dkt. 82 ("even adding the word 'made by,' . . . Bank of America . . . [was] the only entity left after the merger . . . who could make the payment" and "to whom the Government could have made a payment").

tion becomes liable for the acquired corporation's 'debts, liabilities and duties.'" Order 11 (citing Del. Code Ann. tit. 8, § 259(a)). But then it stated that "later changes in corporate structure cannot retroactively change a taxpayer's status as to earlier payments." *Id.* (internal quotation marks omitted). That was wrong: Under state law, a surviving corporation *is* retroactively considered the same as all merged companies, and that principle carries over to federal tax law. *See* pp. 20-31, *supra*.

### 3. The district court's decision ignores the realities of tax compliance and leads to unfair results

It would not make sense to read Section 6621(d) as frozen in time. Corporations make good-faith efforts to satisfy their tax liabilities at the time they file their returns; indeed, they can be penalized for knowingly underpaying their taxes. *See* 26 U.S.C. § 6651(a)(3). Overpayments or underpayments typically arise only afterwards, for example because of losses that occur in later years that are carried back to previous tax years, *see, e.g.*, *id.* § 172; IRS audits, *id.* § 7602; or amendments to previous returns in light of newly discovered facts, *see, e.g.*, 26 C.F.R. § 301.6402-3. Those adjustments generally are considered retroactive to the dates of the tax returns. *See* 26 U.S.C. §§ 6601(a), 6611(b)(2).

Thus, as a matter of historical fact, a taxpayer's overpayment and underpayment amounts may not be known at the points fixed in time by the

district court (for underpayments, the due date for that tax year, and for overpayments, the date the taxpayer's payments exceeded the amount owed, Order 4 n.2, Dkt. 83). "By the same taxpayer" therefore should not be limited to those times.

The test cases illustrate those points. Both involve Bank of America's merger with Merrill Lynch in 2013. Joint Mot. for Proposed S.J. Briefing Schedule 2, Dkt. 63. In the first test case, Bank of America seeks to net the interest on an underpayment for Bank of America's 2005 tax year with the interest on an overpayment for Merrill Lynch's 2005 tax year for the period March 15, 2010, to June 30, 2014. *Id.* In the second test case, Bank of America seeks to net the interest on the underpayment for Bank of America's 2005 tax year with the interest on an overpayment for Merrill Lynch's 1999 tax year for the periods March 15, 2006, to March 15, 2007, and April 15, 2009, to August 26, 2009. *Id.*

For all of the tax years at issue, the overpayments and underpayments only came about because of IRS adjustments made years after the filing of the returns. Bank of America had a zero balance on its 2005 return, Stipulation ¶¶ 70-74, Dkt. 66, and Merrill Lynch similarly had zero balances on its 1999 and 2005 tax returns, *id.* ¶¶ 21-24, 48-52. Then, for Bank of America's 2005 tax year, the IRS made a series of adjustments between 2008 and

2014 that resulted in an underpayment of $120 million, which was deemed retroactive to the date of the return. *See id.* ¶¶ 79-80, 82, 84, 91. The IRS made similar adjustments after the fact for Merrill Lynch's 1995 and 2005 tax years. *See id.* ¶¶ 29-45, 53-64.

Those examples show that both the fact and the amount of an overpayment or underpayment may not be known until years after the taxpayer files its tax return. Thus, whether the taxpayer is the "same" should be determined now, when the taxpayer is settling up for prior tax years and the overpayment and underpayment balances are known.

Indeed, it would be strange to interpret Section 6621(d) in a way that would allow the IRS to consider events that occur after the tax year at issue (such as the IRS's retroactive adjustments of tax liability) for purposes of determining whether there is an overpayment or underpayment, but prohibit the taxpayer from considering other later-occurring events (such as a merger) that also bear on the taxpayer's ultimate tax liability. Section 6621(d) does not require that nonsensical result.

### 4. The Federal Circuit's *Wells Fargo* decision does not justify the district court's decision

The district court relied on the Federal Circuit's decision in *Wells Fargo & Co. v. United States*, *supra*, Order 4, 10-11, Dkt. 83, but that reliance was misplaced.

The taxpayer there, Wells Fargo, was the survivor of several bank mergers. 827 F.3d at 1028. It sought to apply interest netting to overpayments and underpayments by the merged banks. *Id.* Two test cases were at issue, which the court called "situation one" and "situation three." ("Situation two" was undisputed. *Id.* at 1028-29.) In situation one, one bank had an underpayment, a second bank had an overpayment, and then the banks merged, with the second bank surviving. *Id.* at 1029. In situation three, one bank had an overpayment, that bank merged with a second bank with the second bank surviving, and the surviving bank had an underpayment. *Id.* at 1029-30.

The Federal Circuit issued a split decision, holding that Wells Fargo could net the interest in situation three but not in situation one. 827 F.3d at 1034, 1036-41. The apparent explanation for the different results was that the court believed situation one was governed by its prior decision in *Energy East Corp. v. United States*, 645 F.3d 1358 (Fed. Cir. 2011), which it interpreted to "require[]" that the taxpayer be the same "at the time" the overpayments and underpayments "were made" for interest netting to apply. *Id.* (citing *Energy East*, 645 F.3d at 1361).

But for situation three, where it was not bound by *Energy East*, the court held that "interest netting under § 6621 should extend to merged corporations." *Wells Fargo*, 827 F.3d at 1038-41. In coming to that conclusion, the Federal Circuit agreed with Wells Fargo on many key principles. Looking to state law, it recognized that a merger results in the "absorption of the acquired entity into the survivor," such that the survivor of a merger is "the same taxpayer as the pre-merger acquired corporation under § 6621(d)." *Id.* at 1038-39 (internal quotation marks omitted). It cited Code provisions, IRS revenue rulings, and federal tax cases that treat the survivor and the merged companies as the same for federal tax purposes. *Id.* at 1039-40. And it recognized that "Congress enacted § 6621(d) to remedy what it saw as [an] inequity in the tax code" and to ensure that a taxpayer that owes no tax also would not owe interest. *Id.* at 1036-38.

In this case, the district court applied the holding in situation one because this case concerns pre-merger overpayments and pre-merger underpayments. Order 4, Dkt. 83.[6] But that holding relied on *Energy East*, which is inapposite. *Energy East* did not involve a merger; it involved a parent

---

[6] The government has acknowledged that Bank of America can net overpayments and underpayments in situations two and three. *See* Tr. of S.J. Hr'g 25-26, Dkt. 82.

company and two subsidiaries that kept their separate corporate existences after their acquisition by the parent. 645 F.3d at 1359. The parent sought to net the interest on the parent's pre-acquisition underpayments with the interest on the subsidiaries' pre-acquisition overpayments. *Id.* at 1360. The Federal Circuit rejected that interest netting because the parent company "was not the same taxpayer as its subsidiaries at the time the payments were made." *Id.* at 1363. *Energy East* did not consider the effects of merger law because no merger was at issue.

The *Wells Fargo* court recognized that *Energy East* did not involve a merger, but held that *Energy East*'s rule that the taxpayer had to be the same at the time the overpayments and underpayments were "made" "applies regardless of the corporate structures at issue." 827 F.3d at 1034. It summarily asserted that a merger "does not change the fact that [the companies] were separate at the time of the original payments" and does not "make the two separate corporations the same under the statute." *Id.* at 1035.

That is incorrect: State corporate law makes clear that the survivor of a merger is deemed the same company as the merged companies, with retroactive effect. *See* pp. 20-23, *supra*. The Federal Circuit itself recognized that in the second part of its *Wells Fargo* decision, where it extensively

discussed the effect of merger law on situation three. 827 F.3d at 1036-41. With that error corrected, *Wells Fargo* provides no support for the government's position here.

## C. The Payment-Netting Provision, Section 6402(a), Confirms That Bank of America Is The Taxpayer Responsible For The Overpayments And Underpayments

Section 6621(d) should be interpreted in its broader statutory context and consistently with related provisions. *See, e.g.*, *Alexander v. Carrington Mortg. Servs., LLC*, 23 F.4th 370, 378 (4th Cir. 2022). Here, the government's position on Section 6621(d) is flatly inconsistent with its position on Section 6402(a), the payment-netting provision, and it should be rejected for that reason.

### 1. Under Section 6402(a), Bank of America is the "person" that "made" the overpayments and is liable for the underpayments

Section 6621(d) does not exist in isolation, but instead works together with Section 6402(a), the provision that allows netting of the overpayments and underpayments themselves. Section 6402(a) provides:

> In the case of any overpayment, the Secretary . . . may credit the amount of such overpayment, including any interest allowed thereon, against any liability in respect of an internal revenue tax on the part of *the person who made the overpayment* and shall . . . refund any balance to such person.

26 U.S.C. § 6402(a) (emphasis added).[7]  Under this provision, when a "person" has "made" an "overpayment," the government may "credit" (net) that overpayment against any of that person's tax liabilities, including any underpayments.  *Id.*; *see* 26 C.F.R. § 301.6402-3(a)(6)(i) (IRS may credit an overpayment against a liability "owed by the taxpayer making the overpayment").

It is undisputed that under Section 6402(a), the government allows the survivor of a corporate merger to net an overpayment by one merged company against an underpayment by another merged company.  The government has consistently acknowledged this point.  In the court below, it stated that "[a]fter a merger, the surviving corporation may . . . credit [] a not-previously-refunded overpayment of tax by the [merged company] for a tax period preceding the date of the merger" against an underpayment by another merged company.  Gov't RFA Resp. 10-11, Dkt. 67-1.  It took the same position in *Wells Fargo*.  *See* 827 F.3d at 1041 ("The government acknowledge[d]" that under Section 6402(a), "[t]he IRS allows the surviving corporation in a merger . . . to make a claim for refund or credit in the name

---

[7]  The requirement that the government "refund the balance" is subject to various exceptions for pre-existing federal and state obligations, 26 U.S.C. § 6402(c)-(f), none of which is at issue here.

of, and on behalf of, the [predecessor] corporation." (internal quotation marks omitted)).

That position makes sense.  Under state law, the survivor of a corporate merger is responsible for all of the assets and liabilities of the merged companies, including tax overpayments and underpayments.  Del. Code Ann. tit. 8, § 259(a); *see S. Pac. Transp. Co.*, 84 T.C. at 393.  The survivor thus should be able to net all of the overpayments and underpayments and pay (or be refunded) the difference.

The government's approach to Section 6402(a) is fatal to its position on Section 6621(d).  Bank of America and the government agree that under Section 6402(a), Bank of America is the "person" that "made" all of the merged companies' overpayments for tax years before the merger, and also is the same "person" that is liable for all of the merged companies' underpayments.  If that is so, then there is no reason to treat Bank of America as a different taxpayer from the merged banks under Section 6621(d).

### 2.    Section 6621(d) and Section 6402(a) should be interpreted harmoniously

Section 6402(a) and Section 6621(d) both refer to a taxpayer that has overpayments and underpayments, and both provide for netting so that the taxpayer can pay (or be owed) only the net amount of tax or interest due.  Both refer to past overpayments and underpayments and address actions

the parties may take now to settle up for prior tax years. And neither includes a temporal element that precludes consideration of events after the tax years at issue, such as a merger. The two provisions thus should be read consistently, so that the survivor of a corporate merger is the "person" that "made" an overpayment under Section 6402(a) and also is the "same taxpayer" responsible for an overpayment under Section 6621(d). That is especially true because Section 6402(a) already was on the books when Section 6621(d) was enacted, so Congress is "presumed to be familiar" with it. *Wells Fargo*, 827 F.3d at 1041.

The government's position requires the taxpayer to be defined differently in those two related provisions, and it should be rejected for that reason. As the Supreme Court has explained, the Internal Revenue Code "must be given 'as great an internal symmetry and consistency as its words permit.'" *Comm'r v. Keystone Consol. Indus., Inc.*, 508 U.S. 152, 159 (1993) (quoting *Comm'r v. Lester*, 366 U.S. 299, 304 (1961)). And as this Court has recognized, "adjacent statutory subsections that refer to the same subject matter should be read harmoniously." *New Cingular Wireless PCS, LLC v. Finley*, 674 F.3d 225, 249 (4th Cir. 2012) (internal quotation marks omitted); *see, e.g.*, *Alexander v. Carrington Mortg. Servs., LLC*, 23 F.4th 370, 378 (4th Cir. 2022) ("[W]e must interpret a statute as a symmetrical and coherent

regulatory scheme and fit, if possible, all parts into an harmonious whole." (internal quotation marks omitted)). The fact that the government allows the survivor of a merger to net payments under Section 6402(a) thus "supports [the] conclusion that interest netting under § 6621 should extend to merged corporations." *Wells Fargo*, 827 F.3d at 1041.

The government itself has recognized that Section 6402(a) and Section 6621(d) should be interpreted symmetrically. In guidance to staff, the IRS Chief Counsel directed that "the zero interest rate" under Section 6621(d) should apply "in those circumstances where the Service would normally offset if the underpayments and overpayments were currently outstanding" under Section 6402(a). F.S.A. Mem. 200027026, 2000 WL 33116161 (July 7, 2000). That is, if Section 6402(a) payment netting applies, Section 6621(d) interest netting should apply as well. Although this type of a guidance (a field service advisory) does not have "precedential force," it is "evidence" of the meaning of Section 6402(a) and Section 6621(d). *Rowan Cos. v. United States*, 452 U.S. 247, 261 n.17 (1981) (citing 26 U.S.C. § 6110(k)(3)); *see, e.g.*, *Magma Power Co. v. United States*, 101 Fed. Cl. 562, 571-72 (Ct. Cl. 2011).

The presence of the word "made" in Section 6402(a) underscores that the district court erred. As discussed, the district court added the word

"made" to Section 6621(d) and interpreted "made" to require the taxpayer to be the "same" at the exact moment an overpayment or underpayment comes into existence.  Order 4-10, Dkt. 83; *see* pp. 33-36, *supra*.  Section 6402(a) shows that "made" does not have that meaning.  Rather, as the Supreme Court has explained, the phrase "person who made the overpayment" in Section 6402(a) "merely identifies the *person* entitled to the refund" and has no further "limiting effect."  *Sorenson v. Sec'y of the Treas.*, 475 U.S. 851, 860-61 (1986) (rejecting taxpayer's argument to limit plain text of Section 6402(a) in order to avoid paying child support).  In the context of Section 6402(a), then, "made" is not limited to only certain past historical facts, and so "made" should not be interpreted that way if it is added to Section 6621(d).

The government here is trying to have it both ways.  It will net the overpayments and underpayments under Section 6402(a), because it recognizes that as a result of the mergers, Bank of America is considered the "person" that "made" the overpayments and that failed to pay the underpayments.  But then under Section 6621(d), it says that those same overpayments and underpayments were not "by" Bank of America because the mergers cannot be considered.  That is, the government wants to consider

mergers when doing so would be more convenient for it, but not when doing so would benefit taxpayers.

That is exactly the type of gamesmanship this Court rejected in *Southgate Corp. See* 136 F.2d at 221 (holding that government could not treat the merged entities as one entity to determine net income but as separate entities to determine capital stock). The Court explained that it would not allow that "illogical" and "unjust" "interpretation of the tax law," but instead would apply the settled state merger law across the board. *Id.*

The test cases illustrate the inconsistency in the government's position. The IRS ultimately found a $120 million underpayment for Bank of America's 2005 tax year and a $250 million overpayment for Merrill Lynch's 2005 tax year. Stipulation ¶¶ 62, 91, Dkt. 66. In 2014, Bank of America asked the IRS to settle the balance for Bank of America's 2005 tax year by applying the overpayment for Merrill Lynch's 2005 tax year pursuant to Section 6402(a). *Id.* ¶ 67. The IRS agreed and refunded to Bank of America the $130 million difference. *Id.* ¶¶ 88-89, 93. Thus, the IRS recognized that Bank of America is the "person" that "made" Merrill Lynch's overpayment and is entitled to the refund of that overpayment. 26 U.S.C. § 6402(a). It makes no sense for the IRS to also maintain that Bank of America is not the

"same taxpayer" as Merrill Lynch with respect to the same overpayment for purposes of Section 6621(d).

### 3. The district court erred in disregarding Section 6402(a)

The district court addressed Section 6402(a) only briefly. It took the view that Section 6402(a) could not inform the meaning of Section 6621(d) because Section 6402(a) is discretionary. *See* Order 11-12, Dkt. 83. That is mistaken. Tellingly, the government did not even make that argument below.

Section 6402(a) provides that the IRS "*may* credit" a taxpayer's overpayment against the taxpayer's other tax liabilities, 26 U.S.C. § 6402(a) (emphasis added), which means that the IRS has discretion to allow payment netting in a particular case, *see N. States Power Co. v. United States*, 73 F.3d 764, 767 (8th Cir. 1996). But the fact that Section 6402(a) is discretionary does not matter to the interpretative question here.

The government has the discretion to allow payment netting only if the statutory requirements are met – meaning that there is both an "overpayment" "made" by a "person" and a tax liability "on the part of the person who made the overpayment." 26 U.S.C. § 6402(a). Here, the government recognizes that Bank of America qualifies as the "person" that "made" the pre-merger overpayment and that has an offsetting tax liability (the pre-

merger underpayment).  Whether the IRS chooses to apply payment netting in a particular case does not change the fact that the surviving corporation is the "person" that "made" the overpayment and failed to pay an underpayment within the meaning of Section 6402(a).  The only way to interpret Section 6621(d) consistently with Section 6402(a) is to say that Bank of America is responsible for the pre-merger overpayments and underpayments under that statute as well.

The district court also stated that the government argued that Section 6402(a) is not the basis for netting the overpayments and underpayments here.  Order 11-12, Dkt. 83 ("the government denies" that it used Section 6402(a) "to credit Merrill's 2005 overpayment against [Bank of America's] underpayment").  The government did not make that argument in its briefing.  It only suggested in passing at oral argument that it had credited the Merrill Lynch overpayment against Bank of America's underpayment as "a matter of administrative convenience" rather than under Section 6402(a).  Tr. of S.J. Hr'g 33-34, Dkt. 82.

The district court did not accept that argument, and for good reason: Other than Section 6402(a), there is no other Code provision that provides for netting of a taxpayer's overpayments against its existing liabilities.  The IRS's guidance on netting overpayments and underpayments makes that

clear; it refers only to Section 6402(a) as providing the authority for that netting. *See, e.g.*, Rev. Proc. 2011-48, 2011-42 I.R.B. 527. Whether the payment netting is requested by the taxpayer or done on the government's own initiative, it is authorized only by Section 6402(a). Section 6402(a) thus is the basis for the payment netting in this case, and it confirms that Bank of America qualifies for interest netting under Section 6621(d).

### D. Section 6621(d)'s Purpose And History Confirm That Bank Of America's Position Is Correct

Only Bank of America's view of Section 6621(d) furthers Congress's purpose in enacting the statute – to ensure that taxpayers that do not owe any tax also do not have to pay interest. The statute's history makes clear that Congress intended interest netting to apply broadly. And the IRS Chief Counsel previously *agreed* that interest netting applies in the circumstances here.

#### 1. Bank of America's view furthers Section 6621(d)'s purpose, and the government's position thwarts it

Congress recognized that the different interest rates on overpayments and underpayments could result in a situation where a corporate taxpayer owes no tax but still would owe interest. *Wells Fargo*, 827 F.3d at 1036. It enacted Section 6621(d) to ensure that taxpayers are "charged interest only on the amount they actually owe, taking into account overpayments and

underpayments from all open years." S. Rep. No. 105-174, at 61 (1998). The drafters did "not believe that the different interest rates provided for over-payments and underpayments were ever intended to result in the charging of the differential on periods of mutual indebtedness." *Id.* at 62. Indeed, when no tax is "actually owe[d]," *id.* at 61-62, there is no amount on which interest can be charged. Congress repeated its purpose throughout the legislative record.[8]

This Court should give effect to that purpose. *See Long v. Merrifield Town Ctr. Ltd. P'ship*, 611 F.3d 240, 244 (4th Cir. 2010). Bank of America's view of Section 6621(d) is consistent with that purpose, because it ensures that Bank of America will not owe interest when it owes no tax. The government's view is directly contrary to the statute's purpose. It would require Bank of America to pay interest in situations where it owes no tax.

---

[8]  *See* H.R. Rep. No. 105-364, at 63-64 (1997) (Taxpayers should "be charged interest only on the amount they actually owe, taking into account overpayments and underpayments from all open years."); *id.* at 64 ("[T]he different interest rates provided for overpayments and underpayments were [not] intended to result in the charging of the differential on periods of mutual indebtedness."); Joint Comm. on Tax'n, *General Explanation of Tax Legislation Enacted in 1998*, at 72 (1998) ("Congress did not believe that the Federal Government should charge taxpayers a higher interest rate than the Federal Government pays to the extent interest is owed both by and to the Federal Government for the same period on equivalent amounts.").

The government has no explanation for why a corporate taxpayer should have to pay interest when it owes no net tax.

The test cases illustrate the point. All agree that Bank of America does not owe any net tax for the periods at issue in the test cases. In fact, after the government netted the overpayment for Merrill Lynch's 2005 tax year against the underpayment for Bank of America's 2005 tax year, Bank of America had an overpayment balance of $130 million. *See* Stipulation ¶ 93, Dkt. 66. The government paid interest on that net overpayment, at a rate of up to 2.64%. *See* 26 U.S.C. § 6621(a)(1)(B); IRS, *Applicable Federal Rates* (Aug. 8, 2023), https://bit.ly/4bo8ysC. The government is now arguing that Bank of America owes an additional net 3% interest on the $120 million underpayment for Bank of America's 2005 tax year. *See* 26 U.S.C. § 6621(a)(1)(B), (c)(1). Thus, even though Bank of America in effect lent the government $130 million for years, the government claims that *Bank of America* now must pay the *government* interest. That is exactly what Congress did not want to happen.

### 2. Section 6621(d)'s history confirms that Congress intended that provision to apply broadly

Congress initially set equal interest rates for overpayments and underpayments for all taxpayers. *See* 26 U.S.C. §§ 6611(a), 6601(a) (1954). In 1986, Congress changed those rates so that the underpayment interest rate

was higher than the overpayment rate. *See* Tax Reform Act of 1986, Pub. L. 99-514, § 1511(a), 100 Stat. 2085, 2744. But when it made that change, Congress instructed the Treasury Department to "implement[] the most comprehensive netting procedures that are consistent with sound administrative practice" to ensure that taxpayers would not have to pay interest when they did not owe tax. H.R. Rep. No. 99-841, at 785 (1986) (Conf. Rep.).

Congress repeated that instruction each time it adjusted the interest rates. *See* H.R. Rep. No. 101-964, at 1101 (1990) (Conf. Rep.) (same); H.R. Rep. No. 103-826, at 178 (1994) (same); *see also* H.R. Rep. No. 104-506, at 50 (1996) ("Congress has never adopted different[] interest rates . . . without at the same time also encouraging the IRS to implement comprehensive interest netting procedures.").[9] Congress believed that the predecessors to Section 6621(d) – Section 6402(a) (1986) and Section 6601(f) (1986) – gave the IRS authority to comprehensively net interest. *Wells Fargo*, 827 F.3d at 1036.

---

[9] Overpayment and underpayment interest rates remained different for all taxpayers until 1998, when Congress made the rates the same for individual taxpayers but left them different for corporate taxpayers. *See* Internal Revenue Service Restructuring and Reform Act of 1998, Pub. L. No. 105-206, § 3302, 112 Stat. 685 (IRRA).

The Treasury Department repeatedly failed to act for over a decade. Congress "bec[a]me increasingly disappointed at the prolonged failure of the IRS to implement comprehensive interest netting procedures."  H. Comm. on Ways & Means, 104th Cong., *Oversight Initiative Report on Need for Taxpayer Bill of Rights 2 Legislation* 19 (Comm. Print 1995); *see* H.R. Rep. No. 104-506, at 50 (stating its "concern[] that the IRS has failed to implement comprehensive interest netting procedures").  Congress directed the Department to conduct a study, hold hearings, and receive public comments, then publish a report about "the manner in which [it] has implemented the netting of interest on overpayments and underpayments and of the policy and administrative implications of global netting."  Pub. L. No. 104-168, § 1208, 110 Stat. 1452 (1996).

In its report, the Treasury Department took the position that it lacked the statutory authority to implement comprehensive interest-netting rules. Dep't of the Treas., Office of Tax Pol'y, *Netting of Interest on Tax Overpayments and Underpayments* 40 (Apr. 18, 1997).  The Department offered a series of narrow recommendations for interest netting, including that interest netting be limited to income taxes (as opposed to other types of taxes) and that taxpayers bear the burden of showing that they are entitled to interest netting.  *Id.* at 40-41.

Congress disagreed with the Treasury Department's crabbed view of interest netting. It "rejected, in whole or in part, most of the suggestions contained in the Treasury Report." *Exxon Mobil Corp. & Affiliated Cos. v. Comm'r*, 689 F.3d 191, 196 (2d Cir. 2012). Instead, Congress enacted Section 6621(d) to make interest netting "more broadly" available. *Id.* at 204; *see* IRRA § 3301. And Congress made that interest netting mandatory. 26 U.S.C. § 6621(d). In light of that history, courts of appeals have interpreted Section 6621(d) "broadly to effectuate its purposes." *Wells Fargo*, 827 F.3d at 1038; *see Exxon Mobil Corp.*, 689 F.3d at 196-97, 204 (same).

Consistent with that history, this Court should interpret Section 6621(d) to account for the mergers and to ensure that Bank of America owes no interest when it owes no net tax. Congress enacted Section 6621(d) to "expand[] on preexisting interest-netting authority," *Wells Fargo*, 827 F.3d at 1038 – not to artificially limit it as the government suggests.

### 3. The IRS's contemporaneous understanding was that Section 6621(d) applies in the circumstances here

After Congress enacted Section 6621(d), the IRS began providing guidance about how the statute applies in various situations. In 2002, the IRS Chief Counsel issued written guidance to IRS staff about how Section 6621(d) applies in the context of a merger. *See* F.S.A. Mem. 200212028,

2002 WL 442928 (Mar. 22, 2002). It gave the following example, which matches the situation here: Corporation A overpaid its taxes in Year 1, Corporation B underpaid its taxes in Year 3, and the two corporations merged in Year 4 with Corporation B surviving. *Id.* In that situation, the IRS explained, Corporation "B would be entitled to file a claim for interest netting" because "B is both entitled to A's Year 1 overpayment, and is liable for its Year 3 underpayment." *Id.* This guidance, while not "precedential," is "evidence" of the government's understanding of the statute shortly after enactment. *Rowan Cos.*, 452 U.S. at 261 n.17; *see* pp. 48-49, *supra.* It confirms that Section 6621(d) applies because Bank of America and the merged banks are the "same taxpayer" because of the mergers.

The IRS later changed its position after the issue arose in litigation. But that new position is just an attempt to limit interest netting so that the government can get a windfall from taxpayers that do not actually owe any tax. Congress rejected that approach when it enacted Section 6621(d), and this Court should reject it here.

## CONCLUSION

The Court should reverse the district court's decision granting partial summary judgment to the government.

Dated:  May 20, 2024                     Respectfully submitted,

                                         /s/ *Nicole A. Saharsky*

Brian W. Kittle                          Nicole A. Saharsky
Geoffrey M. Collins                      Minh Nguyen-Dang
MAYER BROWN LLP                          Wajdi C. Mallat
1221 Avenue of the Americas              MAYER BROWN LLP
New York, NY 10020                       1999 K Street NW
(212) 506-2187                           Washington, DC 20006
                                         (202) 362-3000
Marjorie M. Margolies                    nsaharsky@mayerbrown.com
MAYER BROWN LLP
71 South Wacker Drive
Chicago, IL 60606
(312) 701-8044

**CERTIFICATE OF COMPLIANCE**

Pursuant to Federal Rule of Appellate Procedure 32(g), undersigned counsel certifies that this brief:

(i)      complies with the type-volume limitation of Rule 32(a)(7)(B)(i) and Local Rule 32(b) because it contains 12,949 words, including footnotes and excluding the parts of the brief exempted by Rule 32(f); and

(ii)      complies with the typeface requirements of Rule 32(a)(5) and the type-style requirements of Rule 32(a)(6) because it has been prepared using Microsoft Office Word 2016 and is set in Century Schoolbook font in a size equivalent to 14 points or larger.

Dated:  May 20, 2024          /s/ *Nicole A. Saharsky*
                              Nicole A. Saharsky

**CERTIFICATE OF SERVICE**

I hereby certify that on May 20, 2024, the foregoing document was served on all parties or their counsel of record through the CM/ECF system.

_/s/ Nicole A. Saharsky_
Nicole A. Saharsky